IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **SUNDROP BOTTLING COMPANY, INC.,** ) | ) |
| ) | |
| Plaintiff, ) | |
| ) | **NO. 1:19-cv-00039** |
| v. ) | |
| ) | **JUDGE CAMPBELL** |
| **FIJI WATER COMPANY, LLC,** ) | **MAGISTRATE JUDGE HOLMES** |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court are the parties' cross motions for summary judgment (Doc. Nos. 55, 59), responses in opposition (Doc. Nos. 63, 65) and replies (Doc. Nos. 67, 69). For the reasons discussed below, Fiji Water Company, LLC's Motion (Doc. No. 55) will be **DENIED**, and Sundrop Bottling Company, Inc.'s Motion (Doc. No. 59) will be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Sundrop Bottling Company, Inc. ("Sundrop") distributes beverage products in ten counties located in Middle Tennessee. (Doc. No. 68 ¶ 2). Fiji Water Company, LLC ("Fiji") sells water derived, bottled, and shipped from the island of Fiji. (*Id*. ¶ 1). Around 2003, Fiji and Sundrop (collectively, the "Parties") entered into a distribution relationship wherein Sundrop agreed to try distributing Fiji to retail establishments in its geographic territory. (*Id*. ¶ 3).

In 2007, a retail establishment located in Sundrop's distribution territory, Wild Oats, was acquired by the national chain Whole Foods. (*Id*. ¶ 12). Fiji products were already being distributed to Whole Foods, and when Whole Foods acquired Wild Oats, it requested the same direct distribution model that was being used for its other stores. (*Id*.). As a result of Whole Foods preference for a uniform distribution model, Fiji advised Sundrop that a distributor who was

already distributing to Whole Foods stores would begin distributing to the Wild Oats located in Sundrop's territory. (*Id.* ¶ 13). Fiji informed Sundrop that the Whole Foods-Wild Oats incursion fee was $1.00 per case. (*Id.* ¶ 14). Sundrop forgot about the incursion fee, and Fiji never paid an incursion fee to Sundrop. (*Id.* ¶ 16).

At times, Fiji created marketing programs with its national and large regional accounts that provided for discounted sales of specified product lines. (*Id.* ¶ 22). Participation in these marketing programs was voluntary for distributors. (*Id.* ¶ 23). In 2014 and 2015, Fiji made a coordinated marketing effort designed to promote sales of Fiji water (the "2015 Marketing Program"). (Doc. No. 70 ¶ 4). Fiji asked all of its distributors, including Sundrop, to contribute to a marketing fund in support of its 2015 Marketing Program. (Doc. No. 66 ¶ 3; Doc. No. 70 ¶ 6). After meeting with Fiji about its 2015 Marketing Program, Sundrop agreed to contribute $1.00 to a marketing fund established by Fiji for each case of Fiji-brand water shipped to Sundrop by FIJI from October 14, 2014 through October 13, 2015, up to a maximum aggregate contribution of $10,936. (Doc. No. 66 ¶ 2; Doc. No. 70 ¶ 7). The distributors who contributed to Fiji's marketing fund in support of Fiji's 2015 Marketing Program, like Sundrop, did not receive any benefit that the nonparticipating distributors did not receive. (Doc. No. 66 ¶ 8). From October 14, 2014 through October 13, 2015, Fiji shipped 13,946 cases of water to Sundrop. (Doc. No. 70 ¶ 8). Sundrop never paid its agreed contribution to Fiji's marketing fund in support of Fiji's 2015 Marketing Program. (*Id.* ¶ 10).

In March 2018, Fiji began to explore different distribution models, and announced the termination of its relationship with its largest distributor in July. (Doc. No. 68 ¶ 25). Around the same time, Fiji initiated conversations with its national and regional accounts at the corporate level about their preferred method of distribution and possible changes to the distribution model. (*Id.* ¶¶ 27, 28). Each account elected whether it would prefer to utilize a direct or indirect distribution

model. (*Id*. ¶ 29). On October 1, 2018, Fiji began selling its products directly to the national accounts that had elected to make the change and provided written notice to Sundrop that it would be terminating the parties' distribution relationship effective October 30, 2018. (*Id*. ¶¶ 31, 37, 38).

On March 6, 2019, Sundrop filed a Complaint in the Circuit Court for Giles County, Tennessee against Fiji, alleging claims of breach of contract and unjust enrichment. (Doc. No. 1-1). Fiji removed Sundrop's action to this Court on April 18, 2019. (Doc. No. 1). On October 7, 2019, Sundrop filed its First Amended Complaint adding a claim for tortious interference with business relations. (Doc. No. 25). On October 19, 2020, Fiji filed its second amended answer and counterclaim against Sundrop for unjust enrichment. (Doc. No. 54). Fiji moved for summary judgment on October 23, 2020, (Doc. No. 55), and Sundrop moved for summary judgment on Fiji's counterclaim on October 26, 2020 (Doc. No. 59).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's*

*Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The standards ... for summary judgment do not change when, as here, 'both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III. ANALYSIS

#### A. Breach of Distribution Contract

To establish a claim for breach of contract under Tennessee law, Sundrop must establish: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *See Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). Fiji argues that it should be granted summary judgment on Sundrop's breach of distribution contract claim because Sundrop cannot establish the existence of an enforceable contract, the alleged distribution relationship was voidable at-will pursuant to the statute of frauds, and no notice was required to terminate the distribution relationship and/or

sufficient termination notice was provided. (Doc. No. 55 ¶¶ 1-3). For the reasons discussed below, Fiji's motion for summary judgment will be denied as to this claim.[1]

1. Existence of enforceable contract

To be enforceable, a contract must "represent mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and must not be contrary to public policy." *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 865 (Tenn. Ct. App. 2002). Fiji argues that there was no enforceable contract because there were no definite terms governing the parties' distribution relationship, meeting of the minds, or mutuality of obligation. (Doc. No. 56 at 8-13).

   i. *Definite terms*

Under Tennessee law, "[i]f the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553–554 (Tenn. Ct. App. 1991) (citation omitted); *see ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 544 (Tenn. Ct. App. 2011) ("Put another way, the terms of a contract are sufficiently definite if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.") (citation and internal quotations omitted). But courts do not favor a conclusion that a contract is too indefinite to warrant enforcement; instead, they aim to carry out the reasonable intentions of parties. *See German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009). In this vein, "courts will seek to avoid finding that an agreement is too uncertain to be enforceable by considering the surrounding circumstances and conduct of the parties." *Id*. (citation omitted). Here, the Court finds

---

[1] Because Fiji seeks dismissal of Sundrop's claim for damages for breach of contract and consequential damages (Count II) solely on the grounds that it is derivative of Sundrop's breach of distribution contract claim (Count I), (*see* Doc. No. 55 ¶ 4), Count II will likewise not be dismissed.

5

that there are genuine disputes of fact surrounding the circumstances and conduct of the parties such that summary judgment is inappropriate on this ground.

      *ii.     Meeting of the minds*

"A meeting of the minds sufficient to give rise to mutual assent 'is determined by assessing the parties' manifestations according to an objective standard.'" *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 476 (6th Cir. 2021) (quoting *Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 810 (Tenn. Ct. App. 2015)). The Tennessee Court of Appeals has explained that:

> Assent can be established by the course of dealing of the parties. In determining whether a contract exists, the court also can consider relevant evidence such as whether the parties performed under its terms. When a party who has not signed a contract has nonetheless manifested consent by performing under it and making payments conforming to its terms, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the contract.

*T.R. Mills Contractors, Inc.*, 93 S.W.3d at 866 (internal citations omitted).

Fiji argues that Sundrop cannot establish the requisite mutual assent without evidence that Sundrop and Fiji "discussed how the distribution relationship would work." (Doc. No. 56 at 10; Doc. No. 67 at 2). In its response, Sundrop points to evidence that the individuals who negotiated the distribution contract on behalf of Sundrop and Fiji understood how each other's companies operated and expected that the distribution relationship would continue consistent with their prior dealings with one another. (Doc. No. 63-2). Additionally, Sundrop points to evidence that both Fiji and Sundrop acted as though the distribution contract was exclusive. (Doc. No. 64-6 ¶¶ 2-3). Sundrop argues that the foregoing evidence creates a genuine dispute as to whether there was mutual assent to any sort of agreement, including an agreement for exclusivity.

6

Fiji's reply did not respond to Sundrop's arguments regarding evidence of the parties' course of dealings and performance as though the distribution contract was exclusive. (*See* Doc. No. 67 at 2). The Court finds that there is a genuine dispute of material fact as the issue of mutual assent.

    *iii.    Mutuality of Obligation*

Fiji argues that the alleged distribution contract lacks the mutuality of obligation required to be an enforceable contract. (Doc. No. 56 at 10). Mutuality of obligation is not required unless lack of mutuality will leave one party without consideration for their promise, *see Ussery v. City of Columbia*, 316 S.W.3d 570, 579 (Tenn. Ct. App. 2009), which neither party argues is the case with regard to the alleged distribution contract.

2. <u>Statute of Frauds</u>

Fiji argues that the alleged distribution relationship was voidable at-will pursuant to the statute of frauds. Tennessee's statute of frauds states that "[n]o action shall be brought ... [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract ... unless the promise or agreement ... shall be in writing." Tenn. Code Ann. § 29-2-101(a)(5). For purposes of determining whether a contract could be performed within a year, the Tennessee Court of Appeals has explained that:

> there must be evidence to demonstrate that the parties specifically agreed that the contract absolutely would not be performed within one year for it to run afoul of the statute of frauds. It is not sufficient to show that it is not reasonably possible to perform the contract within a year, or that such would probably not be done, or that a certain contingency which would bring it within the year time period did not occur.
>
> Moreover, this provision within the statute of frauds is to be construed very narrowly by the courts, since the courts should generally try to give effect to a contract rather than defeat it. "Accordingly, our courts have declined to construe a contract to

7

> require performance over more than one year if to do so would render the contract unenforceable because of the statute of frauds."

*Birdwell v. Psimer*, 151 S.W.3d 916, 919 (Tenn. Ct. App. 2004) (internal citations omitted).

Here, Fiji argues that it reserved the right to void the oral distribution agreement pursuant to the statute of frauds because there is no signed writing memorializing the alleged agreement. (Doc. No. 56 at 13-14 (citing *Trew v. Ogle*, 767 S.W.2d 662, 664 (Tenn. Ct. App. 1988) ("An agreement that falls within the Statute of Frauds is not void but is voidable at the instance of either party. Thus, if either party disaffirms the oral contract, no action, either for specific performance or for damages, can be maintained on the contract.")). In its response, Sundrop argues that Fiji has not met its burden of showing that the parties did not begin performing the contact within the one-year period. (Doc. No. 63 at 15). Fiji's reply did not respond to Sundrop's argument regarding partial performance. (*See* Doc. No. 67). There being no evidence that the parties specifically agreed that the oral agreement would not be performed within one year, Fiji is not entitled to summary judgment under the statute of frauds. *Birdwell*, 151 S.W.3d at 919.

3. Notice of Termination

Under Tennessee law, "[c]ontracts silent on time of termination are generally terminable at will by either party with reasonable notice." *First Flight Assocs., Inc. v. Pro. Golf Co.*, 527 F.2d 931, 935 (6th Cir. 1975) (construing Tennessee law); *see also Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 203 (6th Cir. 1986) ("Contracts terminable at will can only be terminated upon reasonable notice.") (citing *Cates v. Electric Power Board of the Metropolitan Government of Nashville and Davidson County*, 655 S.W.2d 166, 170 (Tenn. Ct. App. 1983)). Fiji asserts that summary judgment is appropriate because it provided 30 days written days written notice of termination. (*See* Doc. No. 56 at 14-15 (citing *Smoky Mountains Beverage Co. v. Anheuser-Busch,*

*Inc.*, 182 F.Supp. 326 (E.D. Tenn. 1960) (holding two-week oral notice of termination of a thirteen-year exclusive distributorship of beer was reasonable)).

However, the determination of what constitutes reasonable notice of termination of a contract "is a fact-specific inquiry dependent upon the length of the contractual relationship between the parties, the reliance which either party has placed upon the continuing vitality of the contractual relationship, the particular business involved, and the practices and customs in the industry." *Misco, Inc.*, 784 F.2d at 203 ("The district court, thus, erred in concluding as a matter of law that thirty days was reasonable notice without considering the specific circumstances surrounding this case."). Additionally, "[r]easonable notice of termination flows from and must be determined in accordance with the standards of good faith and fair dealing implied in every contract." *Id*. "Exactly what constitutes a good faith effort is a difficult question that involves a factual determination." *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 548 (6th Cir. 1994). Viewing the evidence in the light most favorable to Sundrop, a reasonable jury could conclude that Fiji did not provide reasonable notice. Accordingly, summary judgment will not be granted on this ground.

**B. Breach of Whole Foods Contract**

Sundrop brings a separate breach of contract claim concerning Fiji's alleged agreement to pay a one-dollar incursion fee for its transition of a Whole Foods store from distribution through Sundrop to direct distribution that bypassed Sundrop. Fiji argues that summary judgment is appropriate because there is no evidence of consideration. (Doc. No. 56 at 16-17).[2]

---

[2] Fiji also argues that Sundrop seeks damages outside of the six year the statute of limitations period for breach of contract. (*See* Doc. No. 56 at 17-18). However, "Sundrop does not dispute that breach of contract damages for incursion fees related to FIJI-brand water delivered more than six years before Sundrop filed suit are not recoverable." (Doc. No. No. 63 at 16). As such, Fiji's statute of limitations challenge to Sundrop's claimed breach of contract damages is moot.

In its response, Sundrop points to its testimony that incursion fees "are paid in exchange for distributors not challenging the loss of exclusivity, such as through a lawsuit," arguing this evidence creates a genuine dispute of material fact as to the existence of consideration (Doc. No. 63 at 16; Doc. No. 64-6 ¶ 3). In its reply, Fiji contends that the testimony cited by Sundrop action fails to create a genuine dispute of material fact as to whether there was consideration because it contradicts Sundrop's prior deposition testimony:

> Q. And why did you feel a dollar a case was fair in this instance?
>
> A. Because we were getting a dollar a case for nothing. I would have preferred to have kept the business and make $5 a case, but there's a cost involved in that. So it's not like I could renegotiate or do anything any better. I couldn't. It was a take-it-or-leave-it deal. Therefore, it was pretty simple.

(Doc. No. 67 at 4 (citing Doc. No. 68 ¶ 15 (citing Doc. No. 57-1 PageID # 541-42; 175:20-176:3)). However, Fiji omits the immediately preceding testimony:

> Q. Can you explain the purpose of an incursion fee?
>
> A. It is for basically invading somebody's territory. For the benefit, mutual benefit, of both parties to appease a customer, they are willing to pay us a dollar a case out of their incremental margins that they get by selling it direct.

(Doc. No. 57-1 PageID # 541; 175:12-19). When viewed in its entirety, it is clear that Sundrop's deposition testimony does not directly contradict its subsequent statement in its declaration that incursion fees are paid for loss of exclusivity in a given territory. Accordingly, the Court finds that there are material questions of fact as to the issue of consideration. *See Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 29 (Tenn. Ct. App. 2019) (concluding that trial court erred in dismissing breach of contract claim on summary judgment because a material issue of fact existed as to whether the conversations and conduct of the parties established an exchange of consideration); *Est. of Brown*, 402 S.W.3d 193, 200 (Tenn. 2013) ("Adequacy of the consideration

10

with regard to a particular contract is a question of law when the evidence is undisputed and no conflicting inferences can reasonably be drawn from the evidence.").

## C. Unjust Enrichment

Sundrop claims that Fiji was unjustly enriched by Sundrop's marketing efforts (Count IV) and by not paying Sundrop the Whole Foods incursion fee (Count V). Fiji counterclaims that Sundrop was unjustly enriched by Fiji's 2014-2015 marketing efforts. Under Tennessee law, the essential elements of an unjust enrichment claim are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citation and internal quotation marks omitted). "The most significant requirement ... is that the benefit to the defendant be unjust." *Id*. "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." *Id*.

1. Sundrop's Unjust Enrichment Claim re Marketing Efforts (Count IV)

Fiji asserts Sundrop's unjust enrichment claim concerning marketing fails (Count IV) because Sundrop cannot establish the existence of any benefit conferred upon Fiji or that the retention of any benefit allegedly conferred would be inequitable. (Doc. No. 56 ay 19-20). In its response, Sundrop points to evidence that, before 2014, Sundrop grew the market for Fiji-brand water in the ten-county area from effectively zero to more than 10,000 cases a year. (Doc. No. 63 at 18 (citing Doc. No. 64-6 ¶ 6)). Based on the foregoing, Sundrop argues that while the jury will have to determine how many of Fiji's sales resulted from Sundrop's marketing efforts, the existence of that benefit is not in reasonable dispute. (Doc. No. 63 at 19). Sundrop argues that there are material factual disputes on Fiji's appreciation of the benefits that Sundrop conferred on it. In

11

support, Sundrop points to evidence of Fiji's representatives recognizing efforts by Sundrop's representatives in securing shipper placement at Kroger and for securing an end cap display at Target, arguing that this evidence suggests that Fiji appreciated the benefits of Sundrop's work in promoting Fiji-water brand. (Doc. No. 63 at 19-20). Sundrop also argues that material factual disputes exist as to whether it would be unjust for Fiji to retain the benefit conferred upon it by Sundrop. (*See* Doc. No. 63 at 20; Doc. No. 68 ¶¶ 17, 18).

In its reply, Fiji argues that Sundrop ignores the evidence in the record of Fiji's nationwide marketing efforts prior to 2014. (Doc. No. 67 at 5 (citing Doc. No. 68 ¶ 17)). Fiji did not respond to Sundrop's arguments that material facts are in dispute as to Fiji's appreciation of the benefits that Sundrop conferred on it and whether it would be unjust for Fiji to retain that benefit. The Court finds that Fiji has failed to establish the absence of material facts in dispute on Sundrop's unjust enrichment claim concerning marketing (Count IV). Accordingly, summary judgment on this claim will be denied.

2. Sundrop's Unjust Enrichment Claim re Whole Foods Incursion Fee (Count V)

Fiji asserts Sundrop's unjust enrichment claim concerning the Whole Foods incursion fee (Count V) fails because Sundrop cannot establish the existence of any benefit conferred upon Fiji. (Doc. No. 56 at 20). In support, Fiji points to Sundrop's deposition testimony that it was not required to do anything in exchange for the incursion fee. (*Id*. (citing Doc. No. 68 ¶ 15)). In its response, Sundrop produces evidence that the benefit it conferred was Fiji not having to address any action taken by Sundrop because Sundrop did not take any legal or other action against Fiji after Fiji began distributing Fiji-brand water directly to Whole Foods. (*See* Doc. No. 63 at 19 (citing Doc. No. 64-6 ¶ 3)). The Court finds that Fiji has failed to establish the absence of material

facts in dispute on Sundrop's unjust enrichment claim concerning the Whole Foods incursion fee (Count V). Accordingly, summary judgment on this claim will be denied.

3. Fiji's Unjust Enrichment Counterclaim

Sundrop argues that summary judgment is appropriate on Fiji's counterclaim for unjust enrichment because that there is no record evidence that Sundrop appreciated any benefit it may have received or of the value of the alleged benefit conferred. In its response, Fiji argues that Sundrop's positive increase in sales during Fiji's 2015 Marketing Program is evidence that Sundrop appreciated the benefits conferred by Fiji's marketing and that the contribution amount Sundrop agreed to pay is evidence of the value of the marketing Fiji provided through its 2015 Marketing Program.

Under Tennessee law, "damages for unjust enrichment must be based on the reasonable value of the benefit conferred, not the contract price." *FLSmidth Inc. v. Fiber Innovation Tech., Inc.*, 626 F. App'x 625, 629–30 (6th Cir. 2015) (citing *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009)). While a court may award damages for unjust enrichment that are equal to the contract price, it may only do so if that contract price reflects the reasonable value as measured by the customs and practices in the industry. *See e.g., id*. (finding that evidence of contract prices from the defendant's agreements with its supplier, one of the plaintiff's competitors, and a prior agreement with the plaintiff was sufficient to show that the contract price represented the reasonable value of the plaintiff's services as judged by the customs and practices in the industry). Accordingly, damages for unjust enrichment cannot be based solely on the contract price. Here, Fiji has failed to produce evidence that could show that the contract price represents the reasonable value of its 2015 Marketing Program as judged by the customs and

13

practices in the industry. Accordingly, Sundrop's motion for summary judgment will be granted as to Fiji's counterclaim for unjust enrichment.

### D. Tortious Inference with Business Relationships

Sundrop claims that Fiji tortiously interfered with Sundrop's business relationships when Fiji contacted Sundrop's customers before October 1, 2018, with the goal of eliminating Sundrop from the chain of distribution for Fiji water. (Doc. No. 25 ¶¶ 55-59). To prove its claim of tortious interference with business relationships, Sundrop must provide evidence of the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (footnotes and internal citation omitted).

Fiji appears to assert that Sundrop cannot establish the second essential element – that Fiji had knowledge of Sundrop's existing business relationships with specific third parties – because Fiji was only aware of Sundrop's business relationships with "certain retail establishments in Middle Tennessee." (*See* Doc. No. 56 at 21-22). While this argument seems contradictory, it is also undeveloped and unsupported by any reference to the record or legal authority. Fiji's arguments regarding Sundrop's inability to prove the first and fifth elements are equally undeveloped. Similarly, Fiji fails to develop any argument as to why Sundrop cannot meet the third element of intent. Instead, it summarily asserts that "[i]t cannot reasonably be inferred from the available evidence that any of FIJI's actions were done with the intent to affect Sundrop's local business relationships" without any analysis or supporting legal authority. (Doc. No. 56 at 22).

While Fiji cites *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, that case does not address the element of intent. 461 F. Supp. 2d 629, 641-42 (M.D. Tenn. 2006) (granting motion to dismiss tortious interference claim for failure to allege facts sufficient to meet the improper motive or means element).

Fiji's argument that Sundrop cannot establish the fourth element – improper motive or means – because it cannot establish "any improper motive behind FIJI's decision to terminate the relationship" or "that FIJI employed any 'wrongful means' in its efforts transition to a direct distribution model" is also unavailing. (Doc. No. 56 at 22-23). To establish the fourth element, Sundrop must show either that Fiji had an improper motive in interfering with *Sundrop's business relationships with specific third parties* or that Fiji used improper means to interfere with Sundrop's business relationships with specific third parties. *See Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176 (Tenn. Ct. App. 2007). Fiji has failed to establish that is it entitled to summary judgment on Sundrop's claim for tortious interference.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE