IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| SUNDROP BOTTLING COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | NO. 1:19-cv-00039 |
| v. | ) ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| FIJI WATER COMPANY, LLC, | ) ) | |
| Defendant. | ) | |

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Pursuant to Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of fact and conclusions of law.

## I.       INTRODUCTION

Plaintiff Sundrop Bottling Company, Inc. ("Sundrop") brought this action against Defendant Fiji Water Company, LLC ("Fiji"), asserting claims for breach of contract, unjust enrichment, and tortious interference with business relations; Sundrop seeks compensatory and punitive damages. After the Court ruled on the parties' motions for summary judgment, only Sundrop's claims for breach of contract and tortious interference with business relations proceeded to trial.

The claims were tried without a jury on May 30 – 31, 2023.[1] Following the trial, the Court ordered the parties to submit proposed findings of fact and conclusions of law. (Doc. Nos. 183, 184).

---

[1]       The trial transcript is electronically filed at Doc. No. 179 (Vol. I, May 30, 2023), and Doc. No. 180 (Vol. II, May 31, 2023).

## II.     FINDINGS OF FACT

**1.     Sundrop**

During the relevant time period, Sundrop distributed beverage products in ten counties located in Middle Tennessee ("the Geographic Territory"). (Trial Tr., vol. II, 47; Def. Ex. 428 at 28:22-29:1, 30:5-9, 31:3-10). Sundrop distributed to national, regional, and independent locations. (Trial Tr., vol. II,148; Pl. Ex. 300). David Johnson III has served as Sundrop's vice president since 2004 and has been responsible for the day-to-day operations at Sundrop since 2007. (Trial Tr., vol. I, 149).

**2.     Fiji**

Fiji sells water derived, bottled, and shipped from the island of Fiji. (Trial Tr., vol. II, 82). Fiji water is sold in grocery stores, mass merchandisers, drugstores, and convenience stores, among other locations, throughout the United States. (*Id.* at 83). Fiji initiated relationships with national chain retailers and other large accounts to get them to carry Fiji water (the "National Retailers").[2] (Trial Tr., vol. I, 69-70, 215, 217-218, 220; Trial Tr., vol. II 85; Def. Ex. 428 at 112:3-15). For National Retailers, Fiji arranged for the sale of its products, agreed upon pricing, and negotiated marketing programs and product placement. (Trial Tr., vol. I, 72-73; Trial Tr., vol. II, 87; Pl. Ex. 329 at 28:13-22; Def. Ex. 428 at 96:16-20, 97:3-98:9, 98:24-99:7, 100:4-15, 107:8-108:13, 139:19-142:22, 143:23-144:8, 154:12-156:3, 161:4-20). Fiji secured shelf space with National Retailers by paying slotting fees. (*Id.* at 88).

---

[2]     These National Retailers included Walmart, Walgreens, Publix, Kroger, Costco, Sam's Club, Target, Fresh Market, Harris Teeter, CVS, Pilot Travel Centers, Sunoco/Tiger Market, The Pantry, Speedway, Travel Centers of America, Murphy Oil, Foodland, Dollar General, K-Mart, Market Place, Rite-Aid, Marriot, and Hilton.

2

3.      **The Oral Distribution Agreement**

In 2003, Fiji and Sundrop entered into an oral agreement for Sundrop to be the exclusive distributor of Fiji water to retail establishments in the Geographic Territory (the "Distribution Agreement"). (Def. Ex. 428 at 16:12-17:25, 39:22-43:11, 170:24-171:7). After Fiji formed relationships with National Retailers that resulted in those retailers selling Fiji water in their stores, Sundrop distributed Fiji water in those retailers' stores in its geographic territory. (Trial Tr., vol. I, 218). However, Sundrop did not manage any National Retailers on Fiji's behalf. (Trial Tr., vol. II, 85).

The terms of the parties' oral distribution agreement, including any requirements concerning termination of the agreement, were never reduced to writing, and the parties did not discuss the manner in which either party could terminate the Distribution Agreement. (Pl. Ex. 329 at 22:2-13; Def. Ex. 428 at 40:13-43:23, 103:4-104:1, 105:20-106:12, 112:16-113:2, 124:14-125:3, 214:11-24, 240:11-20; Def. Ex. 429 at 18:14-23, 21:9-22:1, 22:7-14).

To deliver Fiji water to retail establishments within the Geographic Territory, Sundrop would typically keep six to eight weeks' worth of Fiji water on hand in inventory. (Trial Tr., vol. II, 10). In addition to making deliveries to National Retailers, Sundrop representatives promoted Fiji water to regional and independent retailers, secured space for Fiji water at those retailers, and managed those relationships. (Trial Tr., vol. I, 214).  As noted above, the relationships with the National Retailers, however, were formed and managed by Fiji itself. Fiji, not Sundrop, arranged for Fiji water to be sold at the National Retailers and obtained shelf space in those stores. (Trial Tr., vol. I, 51, 152; Trial Tr., vol. II, 88; Pl. Ex. 399). Overall, Sundrop handled approximately one percent of Fiji's total distribution, which accounted for about two percent of Sundrop's total

revenue. (Trial Tr., vol. I, 214; Trial Tr., vol. II, 99). Approximately seventy-five percent of Sundrop's Fiji water deliveries were to Fiji-originated National Retailers.[3]

### 4. Termination of Distribution Agreement

On October, 1, 2018, Fiji provided written notice to Sundrop that it would be terminating the Parties' Distribution Agreement effective October 30, 2018. (Trial Tr., vol. I, 167, 173; Trial Tr., vol. II, 106; Pl. Exs. 155-156; Def. Ex. 428 at 194:8-18, Ex. 49 pp. 3-4). Sundrop's Vice President, David Johnson III, testified that a notice termination period of 60 to 90 days was "the norm." (Trial Tr., vol. I, 208). Sundrop and Fiji never had any discussions about a termination fee until after the termination notice had been provided. (Trial Tr., vol. I, 209-210).

After Fiji terminated the Distribution Agreement, Fiji water was removed from stores in the Nashville division of Kroger in October 2018. (Trial Tr., vol. II, 68; Pl. Ex. 90). Fiji water returned to Kroger stores in April 2019. (Trial Tr., vol. II, 69).

### 5. Evidence of Damages

In 2018, Sundrop's gross margin for the sale of Fiji water was $4.77/case. (Trial Tr., vol. I, 167). The gross margin was calculated by taking the gross dollar volume (or revenue received from sales), minus the laid-in-cost, and then dividing that amount by the total case count. (Trial Tr., vol. I, 165, 166; Pl. Ex. 345).

Sundrop began distributing Evian water in January 2019. (Trial Tr., vol. II, 8). Fiji is known as a premium water, a category that includes other brands such as Evian, Essentia, CORE water, Smartwater, and LIFEWTR. (Trial Tr., vol. II, 11, 82-83). Sundrop distributed Fiji water and CORE water simultaneously, but contractually could not concurrently distribute Fiji and Evian.

---

[3]    Specifically, between January 1, 2010 and December 31, 2018, Sundrop distributed 120,649 cases of Fiji water in its geographic territory, 90,000 of which went to Fiji-originated National Retailers. (Trial Tr., vol. I, 66, 72; Pl. Ex. 300-B).

(Trial Tr., vol. II, 11; Def. Ex. 428 at 228:25-229:5). CORE water is a competitor to Fiji water. After Fiji terminated the Distribution Agreement, Sundrop's sales of CORE water rose substantially, in part because, without Fiji, there was less competition. (Trial Tr., vol. I, 79).

At trial, Sundrop presented three different calculations of its alleged damages resulting from Fiji's failure to provide adequate notice before termination. Johnson asserted that these damages should be equal to six months of Sundrop's gross revenue from the sale of Fiji water based on projections of either: (a) 2,791 cases a month (using Fiji's 2018 annual projection of 33,493 case divided by 12 months); (b) 2,361 cases a month (using Sundrop's 2018 estimated projection of 28,327 cases divided by 12 months); or (c) 2,326 cases a month (using Sundrop's total sales of Fiji water for the past 12 months trailing of 27,909 cases divided by 12 months). (Trial Tr., vol. I, 2, 194-196; Pl. Exs. 223, 224, 405). Johnson arrived at Sundrop's own estimate of its projected sales of Fiji water for 2018 by calculating actual sales of Fiji water for January through August 2018, comparing those sales against the same period January through August 2017 and concluding there was an average 5% annual increase for January through August, and then applying a 5% increase to sales from September 2017 to December 2017 to estimate sales for September 2018 through December 2018. (Pl. Ex. 405). Johnson then added up the 2018 actual sales for January through August plus the estimated sales for September through December and arrived at 28,327 total cases, which he then divided by 12 months. (*Id.*)

Fiji asserts that Sundrop's net margin or profit per case or the sale of Fiji water should be reduced from $4.77/case to at least $4.27/case based on commissions that it would have paid to its salespeople. (Trial Tr., vol. I, 75-76; Trial Tr., vol. I, 38, 75, 90, 98, 167). Fiji also submits that Sundrop's alleged damages for inadequate notice, if any, should be calculated as follows:

| | Period of Notice Required but Not Given | | | | | |
|---|---|---|---|---|---|---|
| | **30 Days** | **60 Days** | **90 Days** | **120 Days** | **150 Days** | **180 Days** |
| **Gross Margin** | $4.77 | $4.77 | $4.77 | $4.77 | $4.77 | $4.77 |
| **Commission** | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 | $0.50 |
| **Net Margin** | $4.27 | $4.27 | $4.27 | $4.27 | $4.27 | $4.27 |
| **Cases/Month** | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 | 2,361 |
| **Cases/Cumulative** | 2,361 | 4,722 | 7,083 | 9,444 | 11,805 | 14,166 |
| **Total** | $10,081.47 | $20,162.94 | $30,244.41 | $40,325.88 | $50,407.35 | $60,488.82 |

(Pl. Ex. 405).

### III.    CONCLUSIONS OF LAW

**A.  Breach of Contract**

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Arc LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (internal citation and quotations omitted).

Here, Sundrop asserts that Fiji breached the Distribution Agreement by failing to provide a reasonable termination notice period. (Doc No. 184, p. 7). The parties agree that the Distribution Agreement is an enforceable contract. The parties also agree that the Distribution Agreement does not contain any terms regarding termination.

The parties stipulated that Tennessee's Uniform Commercial Code ("UCC") applies to the Distribution Agreement at issue. (Doc. No. 168). Under the UCC, a contract that provides

"successive performances but is indefinite in duration" is terminable at will, but requires "reasonable notification." Tenn. Code Ann. § 47-2-309. What constitutes a reasonable time "depends upon what constitutes acceptable commercial conduct in view of the nature, purpose, and circumstances of the action to be taken." Tenn. Code Ann. § 47-2-309. "The determination concerning what constitutes reasonable notice [] is a fact-specific inquiry dependent upon the length of the contractual relationship between the Parties, the reliance which either party has placed upon the continuing vitality of the contractual relationship, the particular business involved, and the practices and customs in the industry." *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198, 203 (6th Cir. 1986).

The UCC also provides that in an appropriate case, additional terms of an agreement may be "inferred from…circumstances [other than parties' language] including… usage of trade." Tenn. Code Ann. § 47-1-201(b)(3). The UCC defines "usage of trade" as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." Tenn. Code Ann. § 47-1-303(c).

Additionally, "[c]ontracting parties may enter into an oral contract. In that case, the parties' course of dealing and performance demonstrates the contract's terms." *Dig. 2000, Inc. v. Bear Communs., Inc.*, 130 F. App'x 12, 18 (6th Cir. 2005) (internal citation omitted). Further, "'[a] course of performance or course of dealing between the parties... is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.' Tenn. Code Ann. § 47-1-303." (*Id.*)

At trial, Clifford testified that Fiji water has a long supply chain, eight to twelve weeks "with good seas". (Trial Tr., vol. II, 82, 144). As a result, Sundrop typically would keep six to eight weeks' worth of inventory of Fiji water on hand in order to make its deliveries. (Trial Tr., vol. II, 10). Sundrop typically ordered Fiji water inventory between six weeks and two months ahead of time (Trial Tr., vol. I, 198; Def. Ex. 428 at 52:15-52:17).

Johnson testified that two to three-months' notice of termination is "the norm." (Trial Tr., vol. I, 208). Johnson also testified that "[t]he termination period is essentially to facilitate a smooth transition to prevent disruption to the branding customer" and "if you've got an eight-week lead time just to get the inventory, it's going to take a little more time to have the appropriate inventory to get to a smooth transition." (Trial Tr., vol. II, 178-180).

On October 1, 2018, Fiji first provided notice to Sundrop that it would be terminating the Distribution Agreement, which Fiji advised would be effective on October 30, 2018. (Trial Tr., vol. I, 167, 173; Trial Tr., vol. II, 106; Pl. Exs. 155-156; Def. Ex. 428 at 194:8-18, Ex. 49 pp. 3-4). Accordingly, Fiji gave twenty-nine days' notice of termination of the Distribution Agreement. After Fiji terminated the Distribution Agreement, Fiji water was removed from stores in the Nashville division of Kroger in October 2018. (Trial Tr., vol. II, 68; Pl. Ex. 90). Fiji water returned to Kroger stores approximately six months later. (Trial Tr., vol. II, 69).

Based on the sales cycle, order and delivery timeline, and Johnson's own testimony, the Court finds that the course of performance between the parties establishes ninety days as a reasonable time period for notice of termination of the Distribution Agreement. Accordingly, the Court finds that Plaintiff has demonstrated that Fiji breached the Distribution Agreement by failing to provide reasonable notice of termination.

**B. Tortious Interference with Business Relations**

To prevail on a claim for tortious interference, a plaintiff must show (1) an existing business relationship with specific third parties; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the termination of the business relationship; (4) the defendant's improper motive or improper means; and finally (5) damages resulting from the tortious interference. *Trau-Med of Am. V. Allstates Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

Sundrop conceded at trial that its tortious interference claim concerns only National Retailers. (Trial Tr., vol. II, 18-19). The evidence from both Sundrop's and Fiji's employees established that it was Fiji, not Sundrop, that acquired National Retailers as customers and handled all business aspects of the relationship once it was established. Sundrop showed at trial that its representatives had relationships with managers at the local store level and that, in one case, it had a relationship with a regional representative of a national retailer. However, Sundrop did not manage any National Retailers on Fiji's behalf. (Trial Tr., vol. II, 85). Instead, Fiji initiated relationships with National Retailers to get them to carry Fiji water and was responsible for arranging for the sale of Fiji water, agreeing upon pricing, and negotiating marketing programs and product placement. (Trial Tr., vol. I, 72-73; Trial Tr., vol. II, 87; Pl. Ex. 329 at 28:13-22; Def. Ex. 428 at 96:16-20, 97:3-98:9, 98:24-99:7, 100:4-15, 107:8-108:13, 139:19-142:22, 143:23-144:8, 154:12-156:3, 161:4-20).

As a result, the Court finds that Sundrop did not establish that it had third-party business relationships with which Fiji interfered. Without showing an existing business relationship with specific third parties, Sundrop cannot prevail on its tortious interference claim, so the Court need not address the remaining elements of this claim. Additionally, because Sundrop failed on the sole

tort claim, punitive damages are not awardable. *Intl. Paper Co. v. IFS Industries, Inc.*, No. 211CV02865JTFTMP, 2013 WL 12284525, at *1 (W.D. Tenn. 2013) (internal citation omitted) ("In Tennessee, the general rule is that punitive damages in breach of contract cases are not available.").

## C. Damages

The Court finds that Sundrop is entitled to receive damages for Fiji's breach of the Distribution Agreement. According to Sundrop's report on yearly gross sales and volume, Sundrop increased sales of Fiji water between twenty and forty percent each year from 2013 to 2017. (Trial Tr., vol. I, 193; Pl. Ex. 345). Sundrop projected that it would sell 28,327 cases of Fiji water in 2018 absent the termination of the Distribution Agreement, while Fiji projected that Sundrop would sell either 33,493 or 36,284 cases. (Trial Tr., vol. II, 143; Pl. Exs. 224, 331). In 2018, Sundrop's gross margin for the sale of Fiji water was $4.77/case. (Trial Tr., vol. I, 167).

The Court finds that Sundrop's net margin or profit per case for the sale of Fiji water should be reduced from $4.77/case to $4.27/case based on commissions that it would have paid to sales people. (Trial Tr., vol. I, 38, 75-76, 90-91, 98-99, 167). The Court further finds that Sundrop's damages for inadequate notice should be calculated by multiplying the total number of cumulative cases of Fiji water (7,083) by Sundrop's net margin ($4.27). As a result, Sundrop's contract damages are $30,244.41.

Sundrop also seeks damages for loss of goodwill related to Fiji's termination of the Distribution Agreement. Loss of a specific brand does not automatically result in loss of goodwill where the product is an insignificant portion of total sales and the specific brand is replaceable. *Dayton Heidelberg v. Vineyard Brands*, 108 F.Supp.2d 859 (S.D. Ohio 2000). In *Dayton Heidelberg v. Vineyard Brands,* plaintiff wine-distributor filed suit against defendant wine-

importer after defendant terminated plaintiff's distributorships due to inadequate sales. The court found that plaintiff's sales of wines imported by the defendant constituted at most .1% of their total sales. The court ultimately held that plaintiff failed to establish the loss of goodwill because "[t]he evidence was that the Defendant's wines constituted an insignificant portion of the Plaintiffs' total sales" and "there was also evidence that the Plaintiffs had other wines in their portfolios which could replace those of the Defendant." *Id.* at 865.

Here, Sundrop handled less than 1% of Fiji's overall distribution. (Trial Tr., vol. II, 99). Additionally, the sale of Fiji water made up only 2.19% of Sundrop's total revenue. (Trial Tr., vol. I, 214). At the time of Fiji's termination of the Distribution Agreement, Sundrop was already selling a competing product of Fiji water, CORE water, and Sundrop's sales of that product increased substantially after Fiji terminated the contract. (Trial Tr., vol. II, 11; Def. Ex. 428 at 228:25-229:5). Sundrop also began distributing Evian water, another premium water brand, in January 2019. (Trial Tr., vol. II, 8).

Accordingly, not only did Sundrop add a competitor brand to its portfolio three months after termination of the Distribution Agreement, it was able to sell more CORE water after it stopped selling Fiji water in part because CORE water no longer had Fiji as competition in many of the stores to which Sundrop distributed. (Trial Tr., vol. I, 79). Accordingly, the Court finds that Sundrop is not entitled to damages for loss of good will.

## IV.  CONCLUSION

For the reasons stated, the Court concludes that (1) Fiji breached the Distribution Agreement by failing to provide a reasonable termination notice period of ninety days; (2) Fiji is liable for breach of the Distribution Agreement in the amount of $30,244.41; and (3) Sundrop failed to establish its tortious interference claim.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

12